# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet
WASHINGTON _____ County

| For Prothonotary Use Only: |
|---|
| Docket No: |
| 2021-6088 |

**FILED**

SEP 10 2021

L. H. HOUGH
PROTHONOTARY

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

## SECTION A

**Commencement of Action:**

☒ Complaint    ☐ Writ of Summons    ☐ Petition
☐ Transfer from Another Jurisdiction    ☐ Declaration of Taking

| Lead Plaintiff's Name: | Lead Defendant's Name: |
|---|---|
| Rachel Friem | Canon-McMillian School District |

**Are money damages requested?** ☐ Yes  ☒ No

Dollar Amount Requested: ☐ within arbitration limits
(check one) ☐ outside arbitration limits

**Is this a *Class Action Suit*?** ☐ Yes  ☒ No      **Is this an *MDJ Appeal*?** ☐ Yes  ☒ No

Name of Plaintiff/Appellant's Attorney: Lane M. Turturice, Esquire

☐ Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

## SECTION B

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
☐ Intentional
☐ Malicious Prosecution
☐ Motor Vehicle
☐ Nuisance
☐ Premises Liability
☐ Product Liability *(does not include mass tort)*
☐ Slander/Libel/ Defamation
☐ Other:
_____
_____

**MASS TORT**
☐ Asbestos
☐ Tobacco
☐ Toxic Tort - DES
☐ Toxic Tort - Implant
☐ Toxic Waste
☐ Other:
_____
_____

**PROFESSIONAL LIABLITY**
☐ Dental
☐ Legal
☐ Medical
☐ Other Professional:
_____
_____

**CONTRACT** *(do not include Judgments)*
☐ Buyer Plaintiff
☐ Debt Collection: Credit Card
☐ Debt Collection: Other

☐ Employment Dispute: Discrimination
☐ Employment Dispute: Other

☐ Other:
_____
_____

**REAL PROPERTY**
☐ Ejectment
☐ Eminent Domain/Condemnation
☐ Ground Rent
☐ Landlord/Tenant Dispute
☐ Mortgage Foreclosure: Residential
☐ Mortgage Foreclosure: Commercial
☐ Partition
☐ Quiet Title
☐ Other:
_____

**CIVIL APPEALS**
Administrative Agencies
☐ Board of Assessment
☐ Board of Elections
☐ Dept. of Transportation
☐ Statutory Appeal: Other
_____
_____
☐ Zoning Board
☐ Other:
_____
_____

**MISCELLANEOUS**
☐ Common Law/Statutory Arbitration
☒ Declaratory Judgment
☐ Mandamus
☐ Non-Domestic Relations Restraining Order
☐ Quo Warranto
☐ Replevin
☐ Other:
_____

**EXHIBIT**
**A**

*Updated 1/1/2011*

IN THE COURT OF COMMON PLEAS
OF WASHINGTON COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| RACHEL FRIEM, AND CODY HICKTON, | ) ) ) | CIVIL DIVISION |
| | ) | Docket No. 2021- |
| Plaintiffs, | ) ) | |
| | ) | Type of Pleading: |
| vs. | ) ) | **COMPLAINT FOR DECLARATORY JUDGMENT,** |
| | ) | **COMPLAINT IN EQUITY FOR** |
| CANON-MCMILLAN SCHOOL DISTRICT, | ) ) | **TEMPORARY AND PERMANENT INJUNCTIVE RELIEF** |
| | ) | |
| Defendant. | ) ) | |
| | ) | Filed on Behalf of Plaintiffs: |
| | ) | Rachel Friem and Cody Hickton |
| | ) | |
| | ) | Counsel of Record for this Party: |
| | ) | **LANE M. TURTURICE, ESQUIRE** |
| | ) | PA I.D. NO. 85088 |
| | ) | |
| | ) | **DEVLIN A. FISHER, ESQUIRE** |
| | ) | PA I.D. NO. 314214 |
| | ) | |
| | ) | TURTURICE & ASSOCIATES, LLC |
| | ) | 70 E. Wheeling Street |
| | ) | Washington, PA 15301 |
| | ) | |
| | ) | PH: (724) 470-9640 |
| | ) | FAX: (724) 470-9639 |

**Public Access Certification**

I, Lane M. Turturice, Esq., do hereby certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Lane M. Turturice, Esq.

IN THE COURT OF COMMON PLEAS
OF WASHINGTON COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| RACHEL FRIEM, AND CODY HICKTON, | ) ) ) | CIVIL DIVISION |
| | ) | Docket No. 2021- |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| CANON-MCMILLAN SCHOOL DISTRICT, | ) ) ) | |

## PRAECIPE FOR APPEARANCE

TO: PROTHONOTARY

Please enter our appearance for the Plaintiffs in the above-captioned

matter.

TURTURICE & ASSOCIATES, LLC

By: _____
LANE M. TURTURICE, ESQUIRE
PA I.D. No. 85088

70 E. Wheeling Street
Washington, PA 15301
724-470-9640

IN THE COURT OF COMMON PLEAS
OF WASHINGTON COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| RACHEL FRIEM, AND<br>CODY HICKTON, | ) | CIVIL DIVISION |
| | ) | |
| | ) | Docket No. 2021- |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CANON-MCMILLAN SCHOOL<br>DISTRICT, | ) | |
| | ) | |

## **NOTICE**

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE ONE OF THE OFFICES SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET HELP.**

**IF YOU DO NOT KNOW A LAWYER, CONTACT-**
Pennsylvania Lawyer Referral Service
100 S. Street, PO Box 186
Harrisburg, PA 17108
Telephone Number (800)692-7375

**IF YOU CANNOT AFFORD A LAWYER, CONTACT-**
Southwestern Pennsylvania Legal Aid Society
45 E. Main Street, Ste. 200
Uniontown, PA 15401
Telephone Number (724) 439-3591

IN THE COURT OF COMMON PLEAS
OF WASHINGTON COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| RACHEL FRIEM, AND | ) | CIVIL DIVISION |
| CODY HICKTON, | ) | |
| | ) | Docket No. 2021- |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CANON-MCMILLAN SCHOOL | ) | |
| DISTRICT, | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT, COMPLAINT IN EQUITY FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF

AND NOW, comes the Plaintiffs, Rachel Friem and Cody Hickton, by and through their counsel, Lane M. Turturice, Esq. of the law firm of Turturice & Associates, LLC, to file this Complaint, and in support thereof respectfully avers the following:

1.      The Plaintiff, Rachel Friem, is an adult individual residing at the address of 33 Cheslock Road, Canonsburg, Washington County, Pennsylvania 15317.

2.      The Plaintiff, Cody Hickton is an adult individual residing at the address of 1053 Oakbrook Drive, Canonsburg, Washington County, Pennsylvania 15317.

3.      The Defendant, Canon-McMillan School District, (hereinafter referred to as the "District"), is a duly incorporated school district operating in the

Commonwealth of Pennsylvania with a principal business location of 1 North Jefferson Avenue, Canonsburg, Washington County, Pennsylvania 15317.

4.      The Plaintiffs, Rachel Friem, and Cody Hickton, (hereinafter collectively referred to as "Plaintiffs"), bring this action as a result of the Defendant, Canon-McMillan School District having caused damages to the Plaintiffs by conducting an illegal search and seizure of personal medical information and requiring their children to divulge their CoVid-19 vaccination status by undergoing a medical examination in front of other students without first obtaining parental consent.

## **BACKGROUND**

5.      Paragraphs 1 through 4 are hereby incorporated by reference as though more fully set forth herein at length.

6.      Since the spring of 2020, the United States and the rest of the world have been responding to the CoVid-19 pandemic.

7. As a result of the global CoVid-19 pandemic, Pennsylvania school districts have implemented various policies designed to minimize the impacts of CoVid-19.

8. During the summer of 2021, the Canon-McMillan School District created a Health and Safety Plan, as having such a plan was a prerequisite, under Section 2001(i)(1) of the American Rescue Plan Act for the District to obtain federal funding under the ARP Elementary and Secondary School Emergency Relief Fund (ESSER). (A copy of the most current Canon-McMillan Health and Safety Plan is attached hereto

and marked as Exhibit "A").

9. The Canon-McMillan School District Health and Safety Plan is a fluid CoVid-19 plan that states, in part, that the District will "continually review and monitor guidance from PDE [the Pennsylvania Department of Education], PADOH [the Pennsylvania Department of Health], and CDC [the Centers for Disease Control and Prevention]" and in the event that "conditions or guidance changes" the Canon-McMillan School District "will update the Health and Safety Plan as needed".

10.     The Canon-McMillan School District approved its Health and Safety Plan at a public meeting on June 24, 2021, and began implementation of the same, immediately thereafter.

11.     The first day of in-person classroom instruction for the 2021-2022 academic year at Canon McMillan High School was Thursday, August 26, 2021.

12.     The Plaintiffs are the parents and/or guardians of students that are currently enrolled in the Canon-McMillan School District.

13.     It is believed and therefore averred that immediately prior to or on or about Monday, August 30, 2021, that a student at Canon-McMillan High School tested positive for CoVid-19 and the District undertook a contact tracing investigation that identified a list of students who may have had contact with said student that tested positive for CoVid-19.

14.     Based on information received directly from the District, as a result of the contact tracing investigation, a total of at least 70 students were identified as having been in close contact with the student that tested positive for CoVid-19.

15.     It is believed and therefore averred that the Plaintiffs' children were included on the list of students that were identified as having possibly been in contact with the student who tested positive for CoVid-19.

16.     Upon discovering that the Plaintiffs' children may have been exposed to CoVid-19 while in school, the Canon-McMillan School District did not immediately contact the Plaintiffs to notify them of the situation, what was transpiring, or to obtain parental consent to either have their children divulge any personal medical information to the school or to perform any type of medical examinations on their children.

17.     Instead of immediately contacting the Plaintiffs, on or about Monday, August 30, 2021, the school nurse summarily removed the children from the classroom.

18.     It is believed and therefore averred that the school nurse removed the children from the classroom by calling the respective classroom teacher for each student identified in the contact tracing investigation and directed them to instruct the students to report to the school nurse's office, immediately.

19.     It is believed and therefore averred that, at this time, rather than taking any steps to isolate the students from each other, as they had possibly been exposed to

another student who tested positive for CoVid-19, the school nurse had the classroom teachers instruct the students to report en masse to the school nurse's office.

20.    Each respective classroom teacher for the children identified then received and answered a telephone call from the school nurse and briefly spoke with her.

21.    Upon completing the telephone calls with the school nurse, the classroom teachers for each respective student then instructed them to report to the school nurse's office, immediately.

22.    As an example, the classroom teacher for Plaintiff Friem's son, upon completing the call with the school nurse, hung up the telephone and stated to him in front of other students "Matthew, take everything with you and go to nurse. She needs to see you."

23.    The children of the other Plaintiffs had similar experiences to Plaintiff Friem's son with their classroom teachers directing them to report to the school nurse's office immediately in front of other students.

24.    In at least one situation, the children in a classroom were instructed by a professional staff member aloud to raise their hands if their families chose to be vaccinated.

25.    The school nurse at the District's Middle School apparently also questioned the children, not only if they were vaccinated, but if the people living within

their homes were vaccinated.

26.     As a result, Plaintiff Friem's son and the other students complied were forced to comply with the District's directives and went to the school nurse's office as instructed.

27.     Prior to and immediately after directing the Plaintiffs' children to go to the school nurse's office, the District did not contact the Plaintiffs to notify them of the situation, what was transpiring, or to obtain consent to perform any medical examinations on their children.

28.     When the Plaintiffs' children arrived at and entered the school nurse's office, there were other adults present, as well as additional students.

29.     Neither the school nurse, nor any other staff member took any steps to isolate the students from either each other or staff members thus increasing the possibility of further transmission of CoVid-19 between all individuals then present and in close proximately to one another.

30.     While in the presence of other students and adults, and with the school nurse's office door wide open, the school nurse informed the Plaintiffs' children that a contact tracing investigation identified them as having been possibly exposed to another student who had tested positive for CoVid-19.

31.     Neither the school nurse, nor any other staff member of the District took any measures to protect this sensitive personal medical information from being

heard by the other adults or students present.

32.    At no time prior to conducting an examination of the Plaintiffs' children did the District make any attempt, whatsoever to contact the student's parents to obtain consent for any medical examination or for the student to divulge any personal medical information or for such information to be shared with other adults or students.

33.    At no time prior to conducting an examination of the Plaintiffs' children did the District permit or even encourage the children to reach out to their parents so that said children could make an informed decision prior to allowing the District to conduct a medical examination, which was designed to compel the children to divulge personal medical information which would be shared with other adults and students.

34.    The school nurse then gave the Plaintiffs' children a medical form and directed them to go fill it out in the hallway or the school nurse's office while in the presence of other students and staff members. (A copy of the medical form is attached hereto and marked as Exhibit "B").

35.    The top of the medical form states the following:

"You have been called to the nurse's office because you have been identified as a close contact of someone who tested positive for COVID-19. Please fill out the following information and wait for your turn to speak with the nurse. We will discuss individually the possibility of quarantine and contact your parents at that time."

36.     Amongst other things, the same medical form distributed to all other students similarly situated had a field that instructed the students to divulge personal medical information by directing them to answer the following question: "Are you vaccinated: Y / N"?

37.     As directed, the Plaintiffs' children then went into the hallway or remained in the school nurse's office, where additional children were also present and filling out the same medical form to complete the medical form as instructed by the school nurse.

38.     In the hallway and the school nurse's office, there were at least two dozen other students, who were also present, talking with one another, and filling out the same medical form.

39.     The students filling out the medical forms were in such close proximity to one another and adult staff members that everyone present could hear the conversations about the medical form the students were having and, and in many cases, could even easily see the personal medical information the students were writing on the medical forms.

40.     Neither the school nurse, nor any other staff member of the District did anything to isolate the students from each other as they filled out the medical forms, nor did they do anything to protect the personal medical information they were directing the students to divulge without parental consent.

41.     During this process, the school nurse and other adult staff members who were present acted with complete disregard to the sensitive nature of the personal medical information that they were requiring the students to divulge.

42.     The Plaintiffs' children then completed the medical forms and handed them into the school nurse as directed and instructed.

43.     Upon collecting the completed medical forms and completing the medical examination of each student, only then did the school nurse think to contact the parents of the students who were identified and required to complete the medical form and undergo an examination.

44.     The school nurse then called each of the parents of the students, including the Plaintiffs, while other adult staff members and students were present in the same room during the telephone calls and were able to hear the telephone conversations.

45.     During these telephone calls, everyone present was in such close proximity to one another that they were able to hear all of the individual telephone conversations between the school nurse and the parents.

46.     Due to the school nurse's proximity to other students and staff members, including the Plaintiffs' children, information discussed during the telephone calls, including vaccine status, could clearly be heard by everyone present.

47.     The method by which the school nurse contacted the parents of the students, including the Plaintiffs, also did nothing to isolate the students from each other while the telephone calls were being conducted, nor did it do anything to protect the personal medical information they were requiring the students to divulge without parental consent.

48.     At no time during the telephone calls between the school nurse and Plaintiffs did the school nurse or any other District staff member ask the Plaintiffs for their consent for their children to disclose personal medical information to the District, undergo a medical examination, or even mention the medical form the District required the children to complete.

49.     The Plaintiffs only found out about the existence of the medical forms and the fact that their children were required to complete them after speaking with their children later that day.

50.     Based on the information the students were required to disclose, the school district then segregated the students into two different groups, the unvaccinated students and the vaccinated students, and each group was given different instructions.

51.     The segregated unvaccinated students were immediately sent home and instructed to read notes on Schoology as the District does not currently offer a remote educational plan for its students.

52.    Schoology is an online learning management system for distance learning that provides students with access to learning materials; however, it does not have a feature that allows students to remotely view classroom instruction or lectures.

53.    The Canon-McMillan School District does not currently offer a distance learning option for children who would like to opt for remote education that is comparable to in person classroom instruction.

54.    Instead of providing the segregated vaccinated students with a free appropriate public education, the students were told that they would immediately be sent home if they did not agree to wear a face mask for at least five days and then produce a negative CoVid-19 test before removing the face mask.

55.    Plaintiffs' children were in the group of students who were segregated into the vaccinated group of students.

## COUNT I – DECLARATORY JUDGMENT THAT AN ILLEGAL SEARCH AND SEIZURE OCCURRED

56.    Paragraphs 5 through 55 are hereby incorporated by reference as though more fully set forth herein at length.

57.    The Fourth Amendment of the United States Federal Constitution and Pennsylvania Constitution Article I, Section 8 protects individual citizens in the Commonwealth of Pennsylvania against unreasonable searches and seizures.

58.    In fact, the Pennsylvania Supreme Court has construed the Pennsylvania Constitution as providing a greater guarantee and/or expectation of

privacy than is guaranteed to Pennsylvania citizens under the United States Constitution. See Theordore v. Delaware Valley School District, 836 A.2d 76, 84,88, (Pa. 2003)

59.    Plaintiffs seeks a declaratory judgement that the District violated the rights of its students under the United States Constitution and the Pennsylvania Constitution in requiring students to undergo a medical examination and/or an investigative interview into their vaccination status and other medical information without parental consent, and as such constitutes an illegal search and seizure of student private medical information.

60.    The damages sustained by the Plaintiff are ongoing and continuous.

61.    The Defendant, Canon-McMillan School District should be enjoined from conducting any further such examinations or investigations of private personal medical information of students in the absence of parental consent, so as to ensure that the rights of students and their parents are not violated and infringed upon.

WHEREFORE, Plaintiffs, respectfully request that a judgment be entered in favor of the Plaintiffs and against the Defendant, Canon-McMillan School District, together with an amount for costs, attorney's fees and any and all other equitable and legal relief the court deems appropriate, together with the following:

A.    Plaintiff seeks a declaratory judgement that the District violated the rights of its students under the United States Constitution and the Pennsylvania

Constitution in requiring students to undergo a medical examination and/or an investigative interview into their vaccination status and other medical information without parental consent, and as such constitutes an illegal search and seizure of student private medical information;

B.      Plaintiffs seek a declaratory judgement that the District in requiring its students to disclose their vaccination status, in the absence of parental consent, constitutes an illegal medical examination;

C.      Enjoin the District from further enforcing and implementing its policy and/or practice of conducting medical examination of students without parental consent, under any circumstance;

D.      That this Honorable Court grant an order requiring the District to publicly acknowledge that its enforcement and implementation of their policies is violative of Pennsylvania law;

E.      That this Honorable Court grant an order requiring the District to publicly acknowledge that its enforcement and implementation of their policies is violative of Pennsylvania law; and

F.      That this Honorable Court grant such further and additional relief as the Court deems appropriate, whether at law or in equity.

## COUNT II – DECLARATORY JUDGMENT THAT AN ILLEGAL MEDICAL EXAMINATION WAS CONDUCTED

62.     Paragraphs 56 through 61 are hereby incorporated by reference as

though more fully set forth herein at length.

63.    The School Code of the Commonwealth of Pennsylvania at 24 Pa. Stat. Ann. § 14-1405. Assistance; presence of parents states that:

> "Every school physician shall be assisted by a school nurse and every school dentist by a dental hygienist, if available, or trained assistant, who shall be present during each examination. Parents or guardians of children of school age shall be advised in advance of the date of examination and urged to be present. Medical examinations shall be made in the presence of the parent or guardian of the child when so requested by the parent or guardian."

64.    Plaintiff seeks a declaratory judgement that the District formulating and implementing a policy requiring its students to disclose their vaccination status and other private medical information of both themselves and members of their household, without parental consent, constitutes an illegal medical examination in violation of the Commonwealth of Pennsylvania School Code.

65.    The damages sustained by the Plaintiffs are ongoing and continuous.

66.    The Defendant, Canon-McMillan School District should be enjoined enforcing its policy and cease conducting any further medical examinations of students in the absence of parental consent, so as to ensure that the District follows the law as set forth in the Pennsylvania School Code and that the rights of students and their parents are not further violated and infringed upon.

WHEREFORE, Plaintiffs, respectfully request that a judgment be entered in favor of the Plaintiffs and against the Defendant, Canon-McMillan School District,

together with an amount for costs, attorney's fees and any and all other equitable and legal relief the court deems appropriate, together with the following:

     A.      Plaintiff seeks a declaratory judgement that the District by formulating and implementing a policy requiring its students to disclose their vaccination status and other private medical information of both themselves and members of their household, without parental consent, constitutes an illegal medical examination in violation of the Commonwealth of Pennsylvania School Code.;

     B.      Plaintiffs seek a declaratory judgement that the District in requiring its students to disclose their vaccination status, in the absence of parental consent, constitutes an illegal medical examination under the Pennsylvania School Code;

     C.      Enjoin the District from further enforcing and implementing its policy and/or practice of conducting medical examination of students without parental consent, under any circumstance;

     D.      That this Honorable Court grant an order requiring the District to publicly acknowledge that its enforcement and implementation of their policies is violative of Pennsylvania law;

     G.      That this Honorable Court grant an order requiring the District to publicly acknowledge that its enforcement and implementation of their policies is violative of Pennsylvania law; and

     E.      That this Honorable Court grant such further and additional relief as

the Court deems appropriate, whether at law or in equity.

## COUNT III – ILLEGAL RELEASE OF STUDENT PERSONAL MEDICAL INFORMATION

67.     Paragraphs 62 through 66 are hereby incorporated by reference as though more fully set forth herein at length.

68.     The School Code of the Commonwealth of Pennsylvania at 24 Pa. Stat. Ann. § 14-1409. Confidentiality, transference and removal of health records states that:

> "(a) Except as provided under subsection (b), all health records established and maintained pursuant to this act shall be confidential, and their contents shall be divulged only when necessary for the health of the child or at the request of the parent or guardian to a physician legally qualified to practice medicine and surgery or osteopathy or osteopathic surgery in the Commonwealth.
>
> (b) Notwithstanding any limitation on disclosure provided under this section or any other law, a school entity may disclose information from health records to appropriate parties in connection with an emergency if knowledge of the information is necessary to protect the health or safety of the student or other individuals in accordance with the Family Educational Rights and Privacy Act of 1974 (Public Law 90-247, 20 U.S.C. § 1232g)."69.

69.     The Commonwealth of Pennsylvania Judicial Code as stated in 42 Pa. Stat. Ann. §5945 under the "Certain Privileges and Immunities" section states that:

> "§ 5945. Confidential communications to school personnel.
>
> (a) General rule. --

No guidance counselor, school nurse, school psychologist, or home

and school visitor in the public schools or in private or parochial schools or other educational institutions providing elementary or secondary education, including any clerical worker of such schools and institutions, who, while in the course of his professional or clerical duties for a guidance counselor, home and school visitor, school nurse or school psychologist, has acquired information from a student in confidence shall be compelled or allowed: (1) without the consent of the student, if the student is 18 years of age or over; or (2) without the consent of his parent or guardian, if the student is under the age of 18 years; to disclose such information in any legal proceeding, trial, or investigation before any government unit."

70.     Plaintiff seeks a declaratory judgement that the District by negligently formulating and implementing a policy that promotes and permits the release of private medical information of students, and then using that information to discipline and deny students an education is a violation the Pennsylvania School Code.

71.     The damages sustained by the Plaintiff are ongoing and continuous.

72.     The right to a Free Appropriate Public Education (FAPE) did not vanish or go on hiatus as a result of the current pandemic.

73.     The Pennsylvania Department of Education has specifically directed that a students' right to FAPE has at all times remained in full force and effect.

74.     The District has denied its students FAPE as a result of the actions it has taken as stated more specifically, herein and said students are entitled to Compensatory Education.

75.     The Defendant, Canon-McMillan School District should be enjoined from enforcing and implementing its policy and/or practice wherein the District

conducts medical examinations of students in the presence of other students or third parties in violation of the rights to students and parents alike, so as to ensure that the District follows the law as set forth in the Pennsylvania School Code and that the rights of students and their parents are not further violated and infringed upon.

WHEREFORE, Plaintiffs, respectfully request that a judgment be entered in favor of the Plaintiffs and against the Defendant, Canon-McMillan School District, together with an amount for costs, attorney's fees and any and all other equitable and legal relief the court deems appropriate, together with the following:

A.     Plaintiff seeks a declaratory judgement that the District by formulating and implementing a policy requiring its students to disclose their vaccination status and other private medical information of both themselves and members of their household, without parental consent and then taking adverse action against said students to either discipline students or deny them FAPE because of their responses, constitutes an illegal search and a violation of the Commonwealth of Pennsylvania School Code, such that all information collected by the District from students during the District's investigation should be suppressed, altogether;

B.     Plaintiffs seek a declaratory judgement that the District in requiring its students to disclose their vaccination status, in the absence of parental consent, constitutes an illegal medical examination under the Pennsylvania School Code;

C.     Plaintiffs seek a declaratory judgement that the District by formulating

and implementing a policy requiring its students to disclose their vaccination status and other private medical information of both themselves and members of their household, without parental consent and then taking adverse action against said students to either discipline students or deny them FAPE because of their responses, constitutes an illegal search and a violation of the Commonwealth of Pennsylvania Judicial Code;

D.      Enjoin the District from further enforcing and implementing its policy and/or practice of conducting medical examination of students without parental consent, under any circumstance;

E.      Provide affected students with compensatory education, as deemed appropriate;

F.      That this Honorable Court grant an order requiring the District to publicly acknowledge that its enforcement and implementation of their policies is violative of Pennsylvania law; and

G.      That this Honorable Court grant such further and additional relief as the Court deems appropriate, whether at law or in equity.

Respectfully Submitted,

TURTURICE & ASSOCIATES, LLC

By: _____
Lane M. Turturice, Esquire
Attorney for Plaintiffs



# ARP ESSER Health and Safety Plan Guidance & Template

Section 2001(i)(1) of the American Rescue Plan (ARP) Act requires each local education agency (LEA) that receives funding under the ARP Elementary and Secondary School Emergency Relief (ESSER) Fund to develop and make publicly available on the LEA's website a *Safe Return to In-Person Instruction and Continuity of Services Plan*, hereinafter referred to as a *Health and Safety Plan*.

Based on ARP requirements, 90 percent of ARP ESSER funds will be distributed to school districts and charter schools based on their relative share of Title I-A funding in FY 2020-2021. **Given Federally required timelines, LEAs eligible to apply for and receive this portion of the ARP ESSER funding must submit a Health and Safety Plan that meets ARP Act requirements to the Pennsylvania Department of Education (PDE) by Friday, July 30, 2021, regardless of when the LEA submits its ARP ESSER application.**

Each LEA must create a Health and Safety Plan that addresses how it will maintain the health and safety of students, educators, and other staff, and which will serve as local guidelines for all instructional and non-instructional school activities during the period of the LEA's ARP ESSER grant. The Health and Safety Plan should be tailored to the unique needs of each LEA and its schools and must take into account public comment related to the development of, and subsequent revisions to, the Health and Safety Plan.

The ARP Act and U.S. Department of Education rules require Health and Safety plans include the following components:

1. How the LEA will, to the greatest extent practicable, implement prevention and mitigation policies in line with the most up-to-date guidance from the Centers for Disease Control and Prevention (CDC) for the reopening and operation of school facilities in order to continuously and safely open and operate schools for in-person learning;

2. How the LEA will ensure continuity of services, including but not limited to services to address the students' academic needs, and students' and staff members' social, emotional, mental health, and other needs, which may include student health and food services;

3. How the LEA will maintain the health and safety of students, educators, and other staff and the extent to which it has adopted policies, and a description of any such policy on each of the following safety recommendations established by the CDC;



EXHIBIT

"A"

a. Universal and correct wearing of <u>masks</u>;

b. Modifying facilities to allow for <u>physical distancing</u> (e.g., use of cohorts/podding);

c. <u>Handwashing and respiratory etiquette</u>;

d. <u>Cleaning</u> and maintaining healthy facilities, including improving <u>ventilation</u>;

e. <u>Contact tracing</u> in combination with <u>isolation</u> and <u>quarantine</u>, in collaboration with State and local health departments;

f. <u>Diagnostic</u> and screening testing;

g. Efforts to provide COVID-19 <u>vaccinations to school communities</u>;

h. Appropriate accommodations for children with disabilities with respect to health and safety policies; and

i. Coordination with state and local health officials;

The LEA's Health and Safety Plan must be approved by its governing body and posted on the LEA's publicly available website by July 30, 2021.* The ARP Act requires LEAs to post their Health and Safety Plans online in a language that parents/caregivers can understand, or, if it is not practicable to provide written translations to an individual with limited English proficiency, be orally translated. The plan also must be provided in an alternative format accessible, upon request, by a parent who is an individual with a disability as defined by the Americans with Disabilities Act.

Each LEA will upload in the eGrants system its updated Health and Safety Plan and webpage URL where the plan is located on the LEA's publicly available website.

The ARP Act requires LEAs to review their Health and Safety Plans at least every six months during the period of the LEA's ARP ESSER grant. LEAs also must review and update their plans whenever there are significant changes to the CDC recommendations for K-12 schools. Like the development of the plan, all revisions must be informed by community input and reviewed and approved by the governing body prior to posting on the LEA's publicly available website.

LEAs may use the template to revise their current Health and Safety Plans to meet ARP requirements and ensure all stakeholders are fully informed of the LEA's plan to safely resume instructional and non-instructional school activities, including in-person learning, for the current school year. An LEA may use a different plan template or format provided it includes all the elements required by the ARP Act, as listed above.

* The July 30 deadline applies only to school districts and charter schools that received federal Title I-A funds in FY 2020-2021 and intend to apply for and receive ARP ESSER funding.

## Additional Resources

LEAs are advised to review the following resources when developing their Health and Safety Plans:

- CDC K-12 School Operational Strategy
- PDE Resources for School Communities During COVID-19
- PDE Roadmap for Education Leaders
- PDE Accelerated Learning Thorough an Integrated System of Support
- PA Department of Health - COVID-19 in Pennsylvania

# Health and Safety Plan Summary: Canon-McMillan School District

**Initial Effective Date: June 25, 2021**

**Date of Last Review: June 24, 2021**

**Date of Last Revision:**

1. How will the LEA, to the greatest extent practicable, support prevention and mitigation policies in line with the most up-to-date guidance from the CDC for the reopening and operation of school facilities in order to continuously and safely open and operate schools for in-person learning?

    *The school district will continually review and monitor guidance from PDE, PADOH, and CDC. The district has detailed in the table below the prevention and mitigation strategies that provide appropriate prevention given the current conditions. If conditions or guidance changes the district will update the Health and Safety plan as needed.*

2. How will the LEA ensure continuity of services, including but not limited to services to address the students' academic needs, and students' and staff members' social, emotional, mental health, and other needs, which may include student health and food services?

    *When the district returns to five days of in-person learning all traditional academic and support services will be in place. In addition summer school credit recovery, summer school early intervention, and extended school year services for eligible students will be provided. Students will be provided transportation to summer programming and food service during the summer months.*

    *To support student social emotional and mental health K-4 will utilize Teamology, 9-12 will institute a CHILL Room and additional social work services will be added in K-12.*

    *To support staff social emotional and mental health the district will utilize and promote Employee Assistance Program services.*

3. Use the table below to explain how the LEA will maintain the health and safety of students, educators, and other staff and the extent to which it has adopted policies, and a description of any such policy on each of the following safety recommendations established by the CDC.

| ARP ESSER Requirement | Strategies, Policies, and Procedures |
|---|---|
| a. Universal and correct wearing of **masks** | At this time vaccinated students and staff are not required to wear a mask. Masks will be optional for all other staff and students. |
| b. Modifying facilities to allow for **physical distancing** (e.g., use of | Individuals who elect to wear a mask can be provided an area where social distancing and / or |

| | |
|---|---|
| cohorts/podding); | plexiglass dividers are available. This will allow them to remove the mask to eat or drink.<br><br>Dividers will be provided to staff who request them for their desks.<br><br>Signage that encourages social distancing will be posted in common areas throughout school facilities and grounds. |
| c.  Handwashing and respiratory etiquette; | Handwashing and respiratory etiquette signage will be posted in common areas.<br><br>Staff will review and reinforce good hygiene measures such as handwashing, not touching your face, and covering coughs.<br><br>Hand sanitizer and wipes will be provided in every classroom.<br><br>Water fountains will be replaced with bottle fillers. |
| d.  Cleaning and maintaining healthy facilities, including improving ventilation; | High touch surfaces will be disinfected and cleaned daily.<br><br>MERV13 filters will be used and changed regularly in facility ventilation systems.<br><br>Buses will be disinfected daily. |
| e.  Contact tracing in combination with isolation and quarantine, in collaboration with the State and local health departments; | Maintain areas to isolate students/staff that exhibit COVID-like symptoms.<br><br>Will follow contact tracing mandates from the state health departments.<br><br>Will follow quarantine mandates from the state health departments.<br><br>Communicate with staff and students as mandated regarding communicable diseases. |
| f.  Diagnostic and screening testing; | Use a daily screener checklist for students and staff.<br><br>Monitor students and staff for COVID-like Symptoms.<br><br>Encourage staff and students to stay home if they are sick. |

| | |
|---|---|
| g. Efforts to provide <u>vaccinations to school communities</u>; | The district will make its facilities available for vaccine clinics and send notices to the school community regarding those clinics. |
| h. Appropriate accommodations for students with disabilities with respect to health and safety policies; and | The district will provide appropriate accommodations in compliance with federal and state laws for students and staff who have disabilities. |
| i. Coordination with state and local health officials. | The district will work with state and local agencies. |

## Health and Safety Plan Governing Body Affirmation Statement

The Board of Directors/Trustees for Canon-McMillan School District reviewed and approved the Health and Safety Plan on June 24, 2021.

The plan was approved by a vote of:

_9_ Yes

_0_ No

Affirmed on: DATE: June 24, 2021

By:

_Manuel Pihakis_

(Signature* of Board President)

_MANUEL Pihakis_

(Print Name of Board President)

*Electronic signatures on this document are acceptable using one of the two methods detailed below.

**Option A:** The use of actual signatures is encouraged whenever possible. This method requires that the document be printed, signed, scanned, and then submitted.

**Option B:** If printing and scanning are not possible, add an electronic signature using the resident Microsoft Office product signature option, which is free to everyone, no installation or purchase needed.

You have been called to the nurse's office because you have been identified as a close contact of someone who tested positive for COVID-19. Please fill out the following information and wait for your turn to speak with the nurse. We will discuss individually the possibility of quarantine and contact your parents at that time.

Name: ▓▓▓▓▓▓▓▓▓▓ _____

Teacher _____

Do you drive to school?  Yes/ No          Bus Number: ▓▓

Sports: ▓▓▓▓▓▓▓▓▓▓ _____

Activities: _____

VoTech:   Yes  /  No

Are you vaccinated:   Y /  N

Address: _____

Parent name: _____

Parent phone number: _____

**OFFICE USE ONLY**

Quarantine thru: _____

Return to class: _____

Parent Contacted: _____

```
 ┌──────────────────────┐
 │      EXHIBIT         │
 │      ‖B‖             │
 │      ────            │
 └──────────────────────┘
```

## V E R I F I C A T I O N

I verify that the statements made in the **COMPLAINT FOR**

**DECLARATORY JUDGMENT, COMPLAINT IN EQUITY FOR**

**PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF** are true and

correct.  I understand that false statements herein are made subject to the penalties

of 18 Pa. C.S. Section 4904, relating to unsworn falsification to authorities.

_____
Rachel Friem

Date: ___09 / 08 / 2021___

# V E R I F I C A T I O N

I verify that the statements made in the **COMPLAINT FOR DECLARATORY JUDGMENT, COMPLAINT IN EQUITY FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF** are true and correct.  I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. Section 4904, relating to unsworn falsification to authorities.

_____
Cody E. Hickton

Date:   09 / 09 / 2021
_____

Doc ID: dcd1c6a00c57abc48dbe096aff4243c8fa7e5f6d